DIXON *v.* STATE.

(Division B. June 10, 1940.)

[196 So. 637. No. 34200.]

J. S. Finch, of Booneville, and J. D. Finch, of Iuka, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for appellee.

**McGehee, J.,** delivered the opinion of the court.

From a conviction of the crime of murder, and a sentence to serve for life in the state penitentiary, the appellant prosecutes this appeal.

Circumstantial evidence is relied on exclusively to connect the appellant with the murder of his mother, Alabama McRea.

There was no motion for a new trial on the ground that the verdict of conviction was against the overwhelming weight of the evidence, and hence, under the decision of this Court in the case of Justice v. State, 170 Miss. 96, 154 So. 265, the case will not be reversed on that ground, where there is any substantial, reasonable and competent testimony to go to the jury, tending to establish the guilt of the accused beyond a reasonable doubt, and to the exclusion of every other reasonable hypothesis. And when under such circumstances, such substantial, reasonable and competent evidence is introduced, it is within the province of the jury to determine whether the evidence is sufficient to show guilt to the degree that is required when all of the evidence is circumstantial.

The appellant, who was estranged from his wife, resided with his mother, approximately eighty years of age, in her home at the time of her death. She was found lying dead under a bridge about 75 yards from the house, near where the appellant was picking cotton that day in plain view of the bridge, at between 1 and 2 o'clock, P. M., by a searching party. It was testified that shortly after 12 o'clock that day some children crossed this bridge, and passed along near where the appellant was at work; returning in less than an hour, they observed for the first time blood both on the bridge and in the water beneath, but did not observe the body of the deceased; they also noticed lying on the bridge a black turban which the deceased had evidently worn on her head. The children at once reported the incident to their mother, who, however, did not go immediately to the scene, as she was under the impression that they had reference to a bridge farther away. Shortly after the children had made this discovery the appellant claims to have gone from the cotton field to the house over this bridge, with a sack of cotton; that finding the front door locked, he went to the rear of the house, and saw two strange white men leaving it; that he then found that the house had been ransacked, everything taken out of the dresser drawers, the beds upturned as though someone was in search of money or other valuables; that failing to find his mother about the premises, he went to Iuka, where he made the facts known to certain persons, including the sheriff; and that when these persons arrived at the scene a search was instituted. Thereupon the body of the deceased was found, and it is shown that she was struck several times on the head with what appears to have been a hatchet, since some of the wounds were made with a blunt instrument, and others were cuts.

From the testimony of the sheriff it appears that when the news reached the appellant, at the house, that his mother had been found down at the bridge, and that she was all right, he then insisted that she had been injured.

He denied that there had been a hatchet about the place, but was contradicted on that point by a small boy who likewise lived in the home, but who was absent on the day of the killing. A hatchet was found a few days later in a weed patch some three or four hundred yards from the bridge, but which the little boy claims to have seen under a bush not far from the bridge a week or two before the killing.

The appellant further claimed that the two strange men heretofore referred to came to the house about 9 o'clock that morning to get something to eat, and it appears that he mentioned the incident to a negro woman living nearby at about 11 o'clock that day, which was evidently before the killing occurred. It is the theory of the defense that these two men may have been the murderers.

Thus the two theories were presented to the jury under proper instructions; and we are of the opinion that under all the facts and circumstances the evidence was sufficient to go to the jury on the issue of whether or not the appellant committed the crime.

It was also shown that an axe was found in the house, and that the front door had been considerably damaged from the inside with some such instrument, notwithstanding that the key to this locked door was found in the lock on the inside; and there were other circumstances to warrant the jury in finding that the condition of things in the house disclosed an arranged scene designed to create the impression that the strange men had ransacked the house, a condition which they would have had no reason or motive to create.

A few days before the killing the appellant had gone to a white man in Iuka who was indebted to the deceased in the sum of $18, and wanted to get $10 of the amount, stating that he had to have it by the next Tuesday (the day of the killing). He was told by this person either to have his mother come for the money, or to bring an order from her. Tuesday was the last day within which

he could redeem from a tax sale a small tract of land which he owned, and he was also in default on alimony due his estranged wife. Objection was interposed to the testimony given by the white man at Iuka, and its admission was assigned as error. We think that the circumstance was sufficient to show motive, in view of the fact that the appellant told the officers at first that he thought his mother had $35 or $40 at the house before it was ransacked; and so far as the record discloses, he did not obtain the written order from her for the $10.

Finally, it is suggested that certain testimony in regard to the hatchet's having some blood on the blade should not have been admitted in evidence, for the reason that it was not shown to have been human blood. The case of Hunter et al. v. State, 137 Miss. 276, 102 So. 282, 288, is cited in support of this contention, wherein the Court said: "The state is not compelled in all cases, to make a test scientifically to determine whether the blood-stained garments are stained with human blood or animal blood. Whenever such test can be made, it ought to be done, . . ." In that case, however, the Court held that ordinarily the failure to make the scientific test as to whether blood is that of an animal or of a human being is not reversible error. We do not think that such failure constitutes reversible error in the case at bar.

No other alleged errors are assigned, and we do not feel justified in disturbing the verdict of conviction under all the facts and circumstances of this case.

Affirmed.