YOUNGBLOOD *v.* STATE.

Jan. 12, 1953

No. 38582        15 Adv. S. 11        62 So. 2d 218

*Breed O. Mounger,* for appellant.

204

*J. T. Patterson,* Assistant Attorney General, for appel-lee.

McGEHEE, C. J.

The appellant, Hosea Youngblood, was indicted and tried in February 1952, for the alleged murder of Ray Broomfield on December 8, 1951. The jury convicted the accused of the crime of manslaughter and he was sentenced to serve a term of fifteen years in the state penitentiary. Upon his appeal here he assigns as grounds for a reversal of the case (1) that the trial court denied his motion to exclude the evidence at the close of the State's case and direct a verdict in his favor; (2) that he was refused a peremptory instruction at the close of all of the evidence; (3) that the verdict is contrary to the overwhelming weight of the evidence—a ground not assigned in a motion for a new trial; and (4) the granting of instruction No. 3 for the State, the substance of which will be hereinafter set forth.

We shall consider the first two grounds of alleged error above set forth the same as if one assignment for the reason that they involve the single question on appeal here of whether or not the whole evidence was of sufficient weight to present an issue of fact for the jury, as against the plea of self-defense. On that question, it is to be conceded that the testimony, even of the State's witnesses alone, is in hopeless conflict in many particulars as will be hereinafter shown.

The testimony of the State's witnesses as a whole shows that the defendant was seated at the end of a bench in church on the evening of the homicide and that Ray Broomfield, who was later shot by the defendant Hosea Youngblood, came and sat on the same bench near him

and began reading aloud from a questionnaire that he had received from the local Selective Draft Board; that the mother of the deceased (the designation of the "deceased" being of course in the present tense, and not as of December 8, 1951, before he was shot) asked that he quit reading aloud, evidently because he was disturbing those near him who were listening to the church services; that the deceased then sought an argument with the defendant about whether the former knew how to read and whereupon the defendant stated that "I have not said anything to you about whether you can read or not"; and that thereupon the defendant got up and went out of the church, with the deceased following him, although some of the State's witnesses say that they went out "side by side" and the shooting occurred on the church-yard shortly thereafter. One or possibly as many as two of the several witnesses for the State testified that the defendant invited him to "come follow me out", but the other witnesses did not hear this invitation extended by the defendant.

That State's evidence further shows that upon seeing the deceased follow the defendant out of the church, the mother and two of the sisters of the deceased left the church and tried to get him to come on back into the church; that he then demanded that they let him alone and threatened violence to his mother unless she would leave him alone; that upon the failure of the mother and sisters of the deceased to be able to persuade him to "come on back" in the church, and as some said "leave Hosea alone", the wife of the defendant intervened and said "let him go ahead, Hosea will stop him", that at that time the wife of the defendant was pointing or shaking her finger in the face of the deceased, and that as he "shoved" her hand from near his face, the defendant said "stand back Willie Mae" and then drew his pistol and shot the deceased in the side; that it was found that the deceased was unarmed, although some of the

State's witnesses admitted that he had his left hand "up to his bosom" when the shot was fired by the defendant, while others claimed that he had his hand "in his bosom", whereas one or two of them testified that on the contrary he had his hands "down by his side", all of which would tend to support the theory of self-defense except the testimony of those who said that the deceased had his hands "down by his side" when he was shot—and this testimony was obviously not true since he was shot through his hand and the only bullet that was fired had entered the lower left chest of the victim.

There was other testimony however to the effect that when the wife of the defendant got into the pathway of the deceased, and at a time when the defendant was about ten feet away, the defendant advanced for about half of the distance and shot the deceased who had not attempted to harm the defendant, whereas the wife of the defendant testified that the deceased struck her with his fist; that he threatened "to stop her heart strings from ticking" and made the same threat toward the defendant immediately prior to the shooting; and that the deceased put his hand in his bosom as he was leaving the church, although he was not shot until after a quarrel had occurred on the outside of the church between Broomfield, his mother and sisters, and later between him and the Youngbloods.

Although the proof shows that the only shot fired went through the fleshy part of the left hand of the victim before entering his lower left chest, it is likewise undisputed that the latter was right-handed.

The jury evidently believed that the defendant shot the deceased when the latter either "shoved" or hit the wife of the defendant and that he acted too hastily, even though the deceased was the aggressor at the beginning.

It would unduly prolong this opinion to review in detail all of the conflicting testimony, and it is suf-

ficient to say when it is considered as a whole there was presented an issue of fact for the determination of the jury, and that the case was not one for a peremptory instruction.

■■ On the third assignment of error, it is to be conceded that if the verdict is against the overwhelming weight of the evidence the defendant would have been entitled to a new trial upon motion duly made in that behalf. But under the rule announced in the case of Young v. State, 212 Miss. 460, 54 So. 2d 671, it was held that, ''in order to preserve for review here the point that the verdict was contrary to the great weight of the evidence, a motion for a new trial must be made, particularly assigning that ground.'' Citing Justice, et al. v. State, 170 Miss. 96, 154 So. 265, and in the Young case the Court further stated, (in regard to the question of whether a reversal can be granted here on the ground that the verdict is against the great weight of the evidence): ''Inasmuch as no motion for a new trial was made, and the trial judge had no opportunity to rule upon that question, it follows that there has been no error in that respect for us to review here. Faust v. State, 204 Miss. 297, 37 So. 2d 315; Holmes v. State, 201 Miss. 509, 29 So. 2d 312; Cunningham, et al. v. State, Miss., 200 So. 248; McDougal v. State, 199 Miss. 39, 23 So. 2d 920; Dixon v. State, 188 Miss. 797, 196 So. 637; McLendon v. State, 187 Miss. 247, 191 So. 821; Byrd v. State, 179 Miss. 336, 175 So. 190; Davis v. State, 173 Miss. 783, 163 So. 391; Bryant v. State, 172 Miss. 210, 157 So. 346.''

■■ The instruction No. 3 for the State told the jury in substance that the jurors should not hunt for doubts with a view of finding any excuse or apology for their verdict and that they should not indulge in doubts that are merely conjectural, but that any ''doubts which ought to make you pause and hesitate must be reasonable doubts, . . . and you should not hesitate to find the defendant guilty because you are able to say, outside

of the evidence, that he might have been innocent . . ."
The appellant objects to this instruction because it told
the jury that it should not "hunt for doubts", and be-
cause the instruction cautions the jury not to "pause
and hesitate" unless they were troubled with doubts
that were reasonable; that the instruction does not tell
the jury what to do when they find a reasonable doubt
except that they shall "pause and hesitate", and that
in considering the case they should not do so with the
view of finding any excuse or apology for their verdict.

The criticism of this instruction is not unfounded. In
fact, similar instructions have been frequently disap-
proved by our Court, although the giving thereof has
not been found to constitute reversible error. Hemingway
v. State, 68 Miss. 371, 8 So. 317; Howell v. State, 98 Miss.
439, 53 So. 954; McNeal v. State, 115 Miss. 678, 76 So.
625. And we take this opportunity of again emphasizing,
that an instruction similarly worded should not be given.
Such an instruction is not needed by the State for pre-
senting the issue for the determination of a jury in any
criminal case, and the same is calculated to mislead the
jury in some cases.

The other instructions complained of contained correct
abstract principles of law, and in our opinion they are
not erroneous as applied to the instant case. And while
we do not think that instruction No. 3, containing the
admonitions complained of, should have been given, the
Court has reached the conclusion, after a careful study
of all of the evidence, that the guilt or innocence of the
accused was peculiarly a question for the jury, and that
since this is true we are not justified in reversing the
instant case for a new trial on the weight of the evidence,
since this point was not preserved for review in a motion
for a new trial, as hereinbefore stated.

The judgment appealed from must therefore be affirmed.

Affirmed.

*Roberds, Hall, Holmes* and *Arrington, JJ.,* concur.