# Mills *v.* State

No. 40539      October 21, 1957      97 So. 2d 519

April 1, 1957      93 So. 2d 821

*Fant & Bush,* Holly Springs; *Fred B. Smith,* Ripley; *McClure, Fant & McClure,* Sardis, for appellant.

*Joe T. Patterson,* Atty. Gen., Jackson, for appellee.

McGehee, C. J.

The former County Superintendent of Education of Benton County, Douglas Autry, was indicted jointly with the appellant D. D. Mills in this case for the alleged embezzlement of $1,629 of the school funds of the said county. The said Douglas Autry was tried and convicted

under another indictment under Section 2123, Code of 1942, wherein he was charged jointly with H. M. Rowland and F. P. Wren for the embezzlement of other school funds. The case against Autry under that indictment and conviction was affirmed by this Court on March 4, 1957, as reported in 92 So. 2d 856.

Under the indictment in the case now before us the appellant D. D. Mills alone was tried under a similar indictment to that involved in the Autry case, supra, and was convicted and sentenced to serve a term of five years in the state penitentiary. From that conviction and sentence he prosecutes this appeal.

Section 2123, supra, under which it is contended by the appellant that the indictment in the instant case was drawn, provides as follows: "If any officer, or other person employed in any public office, shall commit any fraud or embezzlement therein, he shall be imprisoned in the penitentiary not more than ten years, or in the county jail not more than one year, or be fined."

The appellant D. D. Mills was at the time complained of in this indictment, a resident citizen of DeSoto County whose principal place of business as a wholesale gas and oil operator was located at Byhalia in Marshall County. As such resident private citizen of DeSoto County he was not therefore an officer, "or other person employed in any public office" in Benton County. He was merely the low bidder for supplying oil and gas in connection with the operation of the school system in Benton County. He was tried upon the theory, as charged in the indictment, that he and Douglas Autry "each then and there aiding, abetting and assisting each other, did * * * defraud of and embezzle from said Benton County the sum of $1629 good and lawful money of the United States, the property of Benton County", and at a time "when in truth and in fact the said sum of money was not due and owing to D. D. Mills, doing business as Mills Oil Company, or any other person or persons connected with the

business, by the said Benton County, Mississippi, * * *.''

The proof as to whether or not Douglas Autry and D. D. Mills aided, abetted and assisted each other in the alleged embezzlement of the $1,629 is somewhat scanty as to the participation of the said Douglas Autry in the alleged commission of this particular offense, the proof on behalf of the State being primarily directed in an effort to show the part played by the appellant alone in the said transaction.

The prosectuion introduced Mr. E. Y. Pettus, an auditor from the State Auditor's Office, who testified that he found in the office of the County Superintedent of Education an invoice bearing date of December 3, 1954, for the alleged sale and delivery to Benton County of 4,800 gallons of gasoline and for other deliveries of gasoline, and for a total invoice of $1,629, but which invoice failed to disclose the name of the seller of the gasoline, or to whom the warrant therefor was supposed to be issued and delivered. When this typewritten invoice was found in the office of the County Superintendent of Education it bore the initials in handwriting of JTS, which was supposed to be the initials of James T. Simpson who receipted for such gasoline and oil as was delivered to Benton County. The said Simpson, as a witness for the State, testified that he did not initial the invoice. The secretary of Douglas Autry said that she did not initial it and that it was not in the handwriting of Douglas Autry. The invoice bore the further notation ''Warrant 564''. A warrant was issued by the secretary of the County Superintendent of Education, Douglas Autry, at his instance on January 11, 1955. The County Superintendent had instructed his secretary to issue warrants for the claims allowed on the claims docket by the School Board, and the School Board's docket of claims showed that it had allowed claims numbered 74 to 94 inclusive, and that a warrant for $1,629 was issued to the Mills Oil Company on January 11, 1955, for one of

these allowed claims, and the same was admittedly duly endorsed by the appellant D. D. Mills and deposited in the bank at Ashland to the credit of the Mills Oil Company.

According to the testimony of the appellant, he did not make out the typewritten invoice, dated December 3, 1954, for the total sum of $1,629, and did not present a claim to the January 1955 meeting of the School Board for that amount or any other amount. However, Mr. Pettus testified that the appellant stated to him, in the presence of the district attorney and the State Auditor, while they were in the office of the sheriff of Marshall County, at Holly Springs, that he did typewrite the said invoice and present it to the School Board. Mr. Pettus further testified that this statement was made to him, the district attorney, and the State Auditor freely and voluntarily. Thereupon the court asked the district attorney as to whether or not he had any other testimony, and he replied, ''No more on whether or not it was free and voluntary.'' Then the court asked the district attorney ''Do you want to take the stand.'' Thereupon the district attorney took the stand and testified out of the presence of the jury that Mr. Mills was questioned ''about these transactions'' and that his statements in regard to them were freely and voluntarily made. The district attorney did not testify as to what statements the appellant had made in the presence of Mr. Pettus, himself, and the State Auditor. Thereafter the special prosecutor stated to the appellant, on cross-examination, after he had denied having made the statement to the effect that he prepared and presented the invoice in question, the following: ''You heard Mr. Hawkins (the district attorney) out of the presence of the jury say that (you) Mr. Mills made this statement * * * ''. Prompt objection was made by the appellant's attorney to the statement that the special prosecutor had thus made to the appellant in the presence of he jury in

regard to what he alleged that the district attorney had said out of the presence of the jury. The court made no ruling on this objection, and the special prosecutor was allowed to continue along the same line of questioning.

The fact that the special prosecutor had advised the jury upon its return by the statement hereinbefore quoted, that the district attorney had testified out of the presence of the jury that the appellant did make the statement to Mr. Pettus, admitting that he had filled out the invoice in question and presented the claim to the county, was incompetent and prejudicial, but the appellant failed to preserve the point by moving to strike from the record the statement of the special prosecutor, and ask that the jury be instructed to disregard it; and the appellant also failed to insist upon the ruling by the court on his objection. Therefore, the appellant cannot now complain on this appeal that the court failed to sustain this objection, since the appellant did not obtain a ruling from the court on the objection one way or the other. It was improper for the jury to be advised on its return of any testimony that may have been given by any witness out of the presence of the jury. In fact, the district attorney had not testified that he heard the appellant state in the presence of Mr. Pettus, the district attorney, and the State Auditor that he had prepared and submitted the invoice to the county for payment. The district attorney had only testified, as heretofore stated, that the answers given by the appellant on the occasion referred to were freely and voluntarily made, and had not testified as to what those statements were. For the reasons hereinbefore stated, the assignment of error in regard to the statement made by the special prosecutor to the appellant in the presence of the jury as to what he claimed had been testified to by the district attorney out of their presence is not well taken for the

reason that the point as to the objection was not preserved.

Since under the case of Adams v. State, 202 Miss. 68, 30 So. 2d 593, a district attorney should not be allowed to testify over the objection of the accused in a criminal case wherein he is the prosecutor unless it is made necessary by special circumstances, the statement hereinbefore quoted as having been made by the special prosecutor to the accused on cross-examination was both incompetent and highly prejudicial. If the trial court had ruled upon the objection, and had overruled it, it would be difficult for this Court to write an opinion that would justify the affirmance of the case in the face of this prejudicial error. We must, however, base our conclusions and decision of the case upon some of the other errors assigned, and where the objections thereto were properly preserved.

The testimony on behalf of the appellant was to the effect that the county was most always behind on its payment to him for gasoline and oil, but contended that the warrant he reecived and cashed on January 11, 1955, was in payment of the following invoices: One on November 17, 1954, 1,000 gals. of gas, $225; one, November 27, 1954, for 5,000 gals. gas, $1175; and the one on December 18, 1954, for tires, etc. $229, which happened to aggregate the exact amount which the appellant and Douglas Autry are alleged in the indictment in this case to have embezzled.

The appellant admitted having presented the three invoices last above mentioned, but denied having presented the one invoice of December 3, 1954, and for which the warrant of $1,629 was issued and cashed on January 11, 1955, after having been allowed on the claim docket at the January 1955 meeting of the School Board. He admitted that he reecived the warrant of $1,629 on January 11, 1955, and that he didn't deliver the 4,800 gallons of gas to the county on December 3, 1954, as called for

by the typewritten invoice of that date, and the preparation and presentation of which invoice he denied having had anything to do with as aforesaid.

The proof discloses on behalf of the appellant that he had a ''running account'' with Benton County during the years of 1953 and 1954, and that at times the warrants allowed him were not in the amounts of his current invoices, since the County was frequently behind with its bills. We agree with the contention of the appellant that the burden was not upon him, but was upon the State to prove that the County was not indebted to the appellant in the sum of $1,629 at the time he received the warrant in that amount on January 11, 1955, and that he knew that he was not entitled to such warrant.

The proof for the prosecution disclosed that at the December 1944 meeting of the School Board the appellant was allowed the sum of $1,580.31, for which two warrants, one in the sum of $658.50 and one in the sum of $921.81, had been duly issued and cashed out of two separate funds, because the first one exhausted all of the balance in the fund on which it was drawn, and such proof showed that two of the items, one for $225 and one for $1,175, which the appellant claimed he thought were included, together with one for $229, in the warrant of $1,629 allowed him at the January 1955 meeting of the School Board, but the State contends that two of the items for which the warrants were issued to and cashed by the appellant following the December 1954 meeting of the Board were included in the said sum of $1,580.31.

The appellant testified that he received the warrant on January 11, 1955, in the regular course of business and that he therefore endorsed it and deposited it in the Ashland bank to the account of the Mills Oil Company. While admitting that he did not deliver any gasoline to the gasoline tank of Benton County on December 3, 1954, as called for by the invoice of that date, which he says he did not fill out or present, he emphatically

denied that he had received any money at any time for gas and oil that he did not actually deliver.

The proof disclosed that an audit had been made on behalf of the State covering the period of the dealings between the appellant and Benton County in 1953 and 1954, but the State introduced only a copy of the docket of claims submitted to the School Board at its December 1954 meeting and at its January 1955 meeting, and introduced only the invoice for gasoline and oil which were alleged to have been submitted by the appellant at the December and January meetings of the School Board. Then too the State introduced only the warrants issued and cashed by the appellant following the December 1954 and January 1955 meetings of the School Board, consisting of three warrants, one for $658.50 and one for $921.81 allowed at the December 1954 meeting of the School Board and the warrant for which the appellant was indicted in the sum of $1,629 allowed at the January 1955 meeting of the School Board. The burden was upon the prosecution to show that when the last mentioned warrant was issued that the County did not owe the Mills Oil Company or D. D. Mills that sum of money, which the indictment alleged that he had embezzled, or any sum approximating the said amount.

The appellant assigns as error the granting of an instruction to the State which told the jury in substance that they were to find the defendant guilty if they believed(1) that Autry and Mills, acting together, defrauded Benton County of $1,629 by issuing and cashing a warrant in that amount; (2) that such money was not due and owing by said County; and (3) that Mills knew such fact.

While the proof is somewhat scanty as aforesaid as to the participation of Autry in the commission of the particular offense alleged in the instant case, we think that since Autry was Secretary of the School Board, and as such knew of the minutes of the Board of the meeting

when these warrants were allowed, and had instructed his secretary to issue warrants for the claims allowed on the docket of claims; and in view of the fact that the warrant in question showed on its face that it was allowed for oil and gas purporting to have been sold and delivered to the County in December 1954, that this instruction merely submitted to the jury the State's theory of the case and left it to the determination of the jury as to whether or not the State had met the burden of proof therein imposed.

██ ██ However, the State's instruction No. 2, which is assigned as error on this appeal, told the jury among other things that if they believed that Mr. Mills and Autry were guilty, it should find Mr. Mills guilty, "regardless of whether or not he (Mr. Mills) received all or any of said money". This instruction was clearly erroneous and prejudicial in that there was no testimony upon which it could have been predicated. Mr. Mills frankly admitted that he received the warrant and deposited it to the account of the Mills Oil Company at the Ashland bank, and there was no testimony whatsoever that Mr. Autry received any part of the proceeds of this warrant. The instruction left the jury to conjecture that Mr. Mills may have been the instrumentality through which the County Superintendent of Education, Autry, received all or some part of the proceeds of the warrant, and without there being any testimony to support such a conjecture.

██ ██ Instruction No. 3 granted the State appears to have been based upon the instruction approved by this Court in the case of Hemingway v. State, 68 Miss. 371, 8 So. 317, and which instruction we think is applicable only to one who fails to pay over to his successor in office the amount due. By its very language it relieved the prosecution of the burden of proving any particular act of embezzlement, where as in the instant case Autry and Mills are charged in the indictment with a particular

act of embezzlement, that of embezzling the warrant for $1,629 of January 11, 1955.

For the reasons hereinbefore stated we have concluded that the case should be reversed and remanded for a new trial.

Reversed and remanded.

*Hall, Lee, Kyle* and *Holmes, JJ.,* concur.

## ON MOTION FOR WRIT OF CERTIORARI

ARRINGTON, J.

■■■ The appellant has filed motion in this cause to return the record filed herein to the Clerk of the Circuit Court of Benton County; for a writ of certiorari; and to remove from the calendar said cause which is set for May 13, 1957, on the ground that the record was prematurely filed in the Supreme Court. It is shown that the official court reporter filed her notes taken in the trial of said cause on March 6, 1957, and notified appellant's attorney to that effect; that on March 12, 1957, the record was filed in the Supreme Court. The appellant correctly contends that the clerk failed to comply with Section 1641 of the Code of 1942, which provides in part as follows:

"1641. Filing of transcript—correction of notes—how made. . . . . For ten days after the date of mailing of the notice by the Court reporter, the appellant's counsel shall have the use of the notes for the purpose of examination and correction, at the expiration of which time the appellant's counsel shall deliver or mail the notes to one firm or attorney representing the appellee, appending to the notes or endorsing thereon a certificate showing the date when the notes were so mailed or delived. The appellant's attorney shall also append any written suggestion or proposed correction in the notes. The appellee's counsel shall be entitled to have the use of the notes for five days from the date of the mailing or

delivery of the same by the appellant, for the purpose of examination or suggesting corrections therein, and at the end of five days the notes shall be returned to the clerk. If neither party shall suggest any corrections, the notes shall upon their return to the clerk by the appellee become a part of the record. . . . .''

In the case of Parmlee, et al v. City of West Point, 216 Miss. 72, 61 So. 2d 444, where the record was prematurely filed, the Court held that where the notes were not shown to be incorrect the motion to strike would be overruled, quoting Section 1643 of the Code of 1942, which provides as follows:

''If notice as above required is given to the court reporter by the appellant or his counsel within ten days after the conclusion of the terms of court, no court reporter's transcript of his notes shall be stricken from the record of the Supreme Court, for any reason, unless it be shown that such notes are incorrect in some material particular, and then only in cases where such notes have never been signed by the trial judge, nor been agreed on by the parties, nor become a part of the record as provided by this chapter.''

The appellant also contends that the record is incomplete in that it does not contain the following: (a) The proceedings at the August 1956 term showing the return of the indictment, the arraignment of the appellant, and the granting of a severance; (b) The final adjournment of the February 1957 term of the Circuit Court; (3) the appellant's notice to the Court Reporter to transcribe and file her notes.

The petition for writ of certiorari is sustained in order that the record may be completed as enumerated above; motion to return record to the clerk is denied.

The above cause being set for May 13, 1957, it is hereby reset for hearing on May 27, 1957.

Writ of certiorari sustained and cause reset for hearing on May 27, 1957, and motion to return record denied.

*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.